FAX or Internet

UNITED STATES DISTRICT COURT

for the

District of Arizona

In the Matter of the Search of:
**Medical Records for Erika Dawn Magos, a female born in 2006, from Western Arizona Regional Medical Center in Bullhead City, AZ**

Case No. 26-04291MB

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer.

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ______ District of Arizona.
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**See Attachment B.**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before September 16, 2026 *(not to exceed 14 days)*

[X] in the daytime 6:00 a.m. to 10 p.m. [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge **Any U.S. Magistrate in the District of Arizona** .
*(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. § 3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* [ ] for ______ days *(not to exceed 30)*.
[ ] until, the facts justifying, the later specific date of ______ .

Date and Time Issued: ______

Camille D. Bibles Digitally signed by Camille D. Bibles Date: 2026.09.03 09:23:44 -07'00'
*Judge's Signature*

City and State: Flagstaff, Arizona

Camille D. Bibles, United States Magistrate Judge

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: ______________________

______________________________
*Executing Officer's Signature*

______________________________
*Printed Name and Title*

# ATTACHMENT A
## THINGS/PLACE TO BE SEARCHED

This warrant applies to medical records for **Erika Dawn Magos** (MAGOS) for her visit/treatment/assessment at Western Arizona Regional Medical Center (WARMC) in Bullhead City, Arizona, on or between July 28, 2026, and July 29, 2026.

MAGOS is an adult Hispanic female, approximately 5'2" tall and is approximately 120 pounds. She has black hair and brown eyes. The last four numbers of her Social Security Number are 4511, and her date of birth is in 2006.

The search warrant will be served at the following location: WARMC Records Department, located at 2735 Silver Creek Road in Bullhead City, Arizona, which is in the District of Arizona.

# ATTACHMENT B

## THINGS TO BE SEARCHED FOR AND SEIZED

Western Arizona Regional Medical Center (WARMC) medical records for **Erika Dawn Magos** (MAGOS) for her visit, assessment, treatment, and/or diagnosis at the WARMC Emergency Department in Bullhead City, Arizona, on or between July 28, 2026, and July 29, 2026. Please include the following medical records pertaining to such treatment:

1. Any ambulance run records for MAGOS.
2. Any evaluations and/or assessments of MAGOS.
3. Any diagnoses and/or impressions of MAGOS's condition, illness, and/or injuries.
4. Any treatment of MAGOS's condition, illness(es), and/or injuries.
5. Any statements MAGOS made in the course of her visit to the WARMC.
6. Any diagnostic testing, results, and/or findings from her visit and/or treatment.
7. Any medical records concerning her admission to the hospital and/or discharge from the hospital, including refusal for treatment, leaving against medical advice (AMA), or any transfer to another medical facility.

8. Any medical records showing, documenting, and/or indicating alcohol or substance use or abuse, impairment, or intoxication (including the use and/or consumption of alcoholic beverages). With respect to any such records, this includes any charts, notes, medical records, laboratory testing/results, breath and/or blood alcohol testing and results (including the use of a preliminary breath test), and any other records showing, documenting, and/or indicating alcohol or substance abuse impairment or intoxication (including the use or consumption of alcoholic beverages) on or about July 28-29, 2026.

9. Any other records not listed above for MAGOS from her visit on or about July 28-29, 2026. Please exclude copies of any x-rays, MRIs, or CT scans, but include reports or records documenting the results (including diagnosis or impressions) from any such tests.

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:

**Medical Records for Erika Dawn Magos, a female born in 2006, from Western Arizona Regional Medical Center in Bullhead City, AZ** ) ) ) )

Case No. 26-04291MB

(Original To Be Filed With Court)

## ELECTRONICALLY SUBMITTED APPLICATION FOR SEARCH WARRANT

I, the undersigned, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on and within the following person or property:

**See Attachment A.**

located in the ________ District of Arizona, there is now concealed:

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

- [X] evidence of a crime;
- [ ] contraband, fruits of crime, or other items illegally possessed;
- [ ] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section(s)* | *Offense Description(s)* |
|---|---|
| 36 C.F.R. § 4.23(a) | Driving Under the Influence of Alcohol in a Park Area |
| 36 C.F.R § 4.22(b)(3) | Failing to maintain control of motor vehicle (unsafe operations) |
| 36 C.F.R. § 2.35(c) | Under the Influence of Alcohol in a Park Area |

The application is based upon the following facts:

- [X] Continued on the attached sheet (see attached **Affidavit**).
- [ ] Delayed notice of __ days (give exact ending date if more than 30 days ______ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: *AUSA Paul Stearns*

**Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

ELIZABETH DIETZEN Digitally signed by ELIZABETH DIETZEN Date: 2026.09.02 11:30:29 -07'00'

*Applicant's Signature*

Executed on: September 2, 2026

Elizabeth Dietzen, Special Agent, NPS

*Printed Name and Title*

__X__ Sworn by Telephone

Date/
Time:

Camille D. Bibles Digitally signed by Camille D. Bibles Date: 2026.09.03 09:23:26 -07'00'

*Judge's Signature*

City and State: Flagstaff, Arizona

Camille D. Bibles, United States Magistrate Judge

*Printed Name and Title*

## ATTACHMENT A
## THINGS/PLACE TO BE SEARCHED

This warrant applies to medical records for **Erika Dawn Magos** (MAGOS) for her visit/treatment/assessment at Western Arizona Regional Medical Center (WARMC) in Bullhead City, Arizona, on or between July 28, 2026, and July 29, 2026.

MAGOS is an adult Hispanic female, approximately 5’2” tall and is approximately 120 pounds. She has black hair and brown eyes. The last four numbers of her Social Security Number are 4511, and her date of birth is in 2006.

The search warrant will be served at the following location: WARMC Records Department, located at 2735 Silver Creek Road in Bullhead City, Arizona, which is in the District of Arizona.

# ATTACHMENT B

## THINGS TO BE SEARCHED FOR AND SEIZED

Western Arizona Regional Medical Center (WARMC) medical records for **Erika Dawn Magos** (MAGOS) for her visit, assessment, treatment, and/or diagnosis at the WARMC Emergency Department in Bullhead City, Arizona, on or between July 28, 2026, and July 29, 2026. Please include the following medical records pertaining to such treatment:

1. Any ambulance run records for MAGOS.
2. Any evaluations and/or assessments of MAGOS.
3. Any diagnoses and/or impressions of MAGOS's condition, illness, and/or injuries.
4. Any treatment of MAGOS's condition, illness(es), and/or injuries.
5. Any statements MAGOS made in the course of her visit to the WARMC.
6. Any diagnostic testing, results, and/or findings from her visit and/or treatment.
7. Any medical records concerning her admission to the hospital and/or discharge from the hospital, including refusal for treatment, leaving against medical advice (AMA), or any transfer to another medical facility.

8. Any medical records showing, documenting, and/or indicating alcohol or substance use or abuse, impairment, or intoxication (including the use and/or consumption of alcoholic beverages). With respect to any such records, this includes any charts, notes, medical records, laboratory testing/results, breath and/or blood alcohol testing and results (including the use of a preliminary breath test), and any other records showing, documenting, and/or indicating alcohol or substance abuse impairment or intoxication (including the use or consumption of alcoholic beverages) on or about July 28-29, 2026.

9. Any other records not listed above for MAGOS from her visit on or about July 28-29, 2026. Please exclude copies of any x-rays, MRIs, or CT scans, but include reports or records documenting the results (including diagnosis or impressions) from any such tests.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALLY SUBMITTED AFFIDAVIT**

Your affiant, NPS Special Agent Elizabeth Dietzen, states under oath as follows:

1. Your affiant is a Special Agent (SA) with the National Park Service (NPS), United States Department of the Interior. Your affiant is presently assigned to the Pacific West Region, duty stationed at Lake Mead National Recreation Area. Your affiant has been employed by the NPS as a law enforcement officer since 2013 and has worked in the role of Special Agent and as a U.S Park Ranger in Maryland, Arizona, Nevada, and California. Your affiant has received training at the Federal Law Enforcement Training Center, completing the Land Management Police Training and the Land Management Investigator Training Program. Your affiant has attended numerous training courses in a variety of law enforcement subjects and have conducted criminal investigations into a variety of offenses, to include driving under the influence (DUI) investigations.

2. The information contained in this affidavit is based upon your affiant's personal knowledge, training, experience, as well as information provided by other law enforcement officers and witnesses including those listed herein. In particular, your affiant has reviewed body worn camera (BWC) from United States Park Ranger's (USPR's) Matthew O'Brien and Tyrel Brant, reviewed dispatch recordings

from the Lake Mead Interagency Communications Center (LMICC), and conducted her own interviews. Additionally, your affiant has reviewed a reports from USPR's O'Brien and Brant from the incident on July 28, 2026. Your affiant has not included every fact known to her concerning this investigation. Your affiant has set forth only the facts necessary to establish probable cause to support issuance of the requested search warrant.

**Introduction/Background**

3. This case involves the July 28, 2026, DUI crash near mile marker one on Cabinsite Road at Katherine Landing within Lake Mead National Recreation Area, which is an area within the jurisdiction of the National Park Service.[1] The single vehicle rollover crash involved bodily injury to several occupants (a total of six reported occupants were in the vehicle). This included serious bodily injury to an occupant who suffered loss of consciousness and a right leg mid-shaft tibial-fibula fracture. The incident constitutes a series of violations to include 36 C.F.R. § 4.23(a), driving under the influence of alcohol and/or drugs, 36 C.F.R. § 4.22(b)(3), failing to maintain that degree of control of a motor vehicle necessary to avoid danger persons, property or wildlife, and 36 C.F.R. § 2.35(c), presence in a park area when

1 The Lake Mead National Recreation Area is also an area within the special maritime and territorial jurisdiction of the United States.

under the influence of alcohol or a controlled substance to a degree that endangered oneself or another person, or damage property or park resources.

4. The vehicle involved in the single vehicle crash (hereby identified as "Subject Vehicle") was identified through the investigation as a 2025 Honda Civic with a Vehicle Identification Number (VIN) of 2HGFE2F56SH578419. The Subject Vehicle is registered to Erica Dawn Magos (Magos) of Bullhead City, Arizona. Magos is the sole registered owner of the vehicle.

5. On July 31, 2026, USPR Logan Schuman executed a search and seizure warrant on the Subject Vehicle on behalf of your affiant. As part of this warrant execution, the Subject Vehicle was taken from A&G Towing in Bullhead City, Arizona, where it was initially taken post-incident, and it was transported to the Bullhead City Police Department impound yard in Bullhead City, Arizona. On August 17, 2026, your affiant executed another search warrant on the Subject Vehicle with Trooper Phil McCabe of the Arizona Department of Public Safety Vehicular Crimes Unit. During the execution of this search warrant, your affiant collected several items of evidence from the Subject Vehicle, to include deoxyribonucleic acid (DNA) swabs from the deployed airbags in the driver's seat area. On August 26, 2026, your affiant executed a search warrant to obtain DNA standards from Magos via buccal swabs. Those standards are being sent to a crime

lab and compared to DNA evidence obtained from the Subject Vehicle during the search on August 17, 2026.[2]

6. This affidavit is submitted in support of an application for a search warrant for any medical records related to Magos's medical condition(s) on or between July 28, 2026, to July 29, 2026, including evidence of intoxication and/or impairment, pertaining to her treatment at Western Arizona Regional Medical Center (WARMC) in Bullhead City, Arizona. It is believed that the medical records sought will support and/or further corroborate that Magos was under the influence of alcohol and/or drugs to a degree that rendered her incapable of safe operation of a motor vehicle. *See* 36 C.F.R. § 4.23(a).[3]

7. The medical records sought in the proposed search warrant are located at 2735 Silver Creek Road in Bullhead City, Arizona, which is in the District of

---

2 The first search warrant was issued on July 31, 2026, in Case No. 26-4235MB. The second search warrant was issued on August 13, 2026, in Case No. 26-04255MB. The third search warrant was issued on August 25, 2026, in Case No. 26-04275MB.

3 As discussed below, initially there was conflicting information provided by the occupants of the Subject Vehicle of who was driving the Subject Vehicle at the time of the crash at issue. However, as set forth in this affidavit, based upon additional investigative activity, your affiant submits that there is probable cause to support that Magos was operating the motor vehicle at the time of the crash. But even if she was not the operator of the Subject Vehicle at the time of the crash, as set forth in this affidavit, the evidence supports that Magos was under the influence of alcohol and/or drugs while present in a park area to a degree that endangerer herself, others, and park resources. 36 C.F.R. § 2.35(c). Moreover, Magos' medical condition after the crash, including any injuries she sustained, are relevant and probative of a violation of 36 C.F.R. § 4.22(b)(3).

Arizona. The place/things to be searched is particularly described in Attachment A, and the things to be searched for and seized are particularly described in Attachment B.

**Investigation/Probable Cause**

8. On July 28, 2026, at approximately 2141 hours, LMICC received a call from Bullhead City Police Department Dispatch Center stating they had received notification of a crash alert from an iPhone with coordinates plotting within Lake Mead National Recreation Area. The tentative GPS location provided from that alert was located at 35.237092, -114.566438, which is located off Cabinsite Road. LMICC received a call from Mohave County Sheriff's Office Dispatch indicating the same event had occurred. In these phone calls, with Bullhead City and Mohave County Dispatchers, LMICC received information from Mohave County Dispatch that a subject stated to them in an open line that they needed help. The dispatcher said the subjects sounded like they were in distress. At 2158 hours, the 911 call was successfully transferred to LMICC, where a male voice could be heard saying, "please send help," "my foot is broken," and "my arm is sliced open." Due to the poor cell service in the area, the LMICC dispatcher could not receive additional information and the call dropped. At about 2204 hours, Bullhead City Dispatch confirmed they had medics on scene. Based on the coordinates provided by Mohave County Dispatch, the crash location appeared to be in the area of Cabinsite Road, approximately .35 miles west of the junction of Princess Cove Road and Cabinsite

Road off the south side of the roadway. United States Park Ranger (USPR) Matthew O'Brien and USPR Tyrel Brant responded to the area.

9. At approximately 2214 hours, USPR Matthew O'Brien arrived in the area of the crash on Cabinsite Road. In his BWC, USPRs O'Brien and Brant are talking with a male and female seated on the ground. The male was later identified as Mason Martin Schmeling. The female was later identified as Erika Dawn Magos. In the background of this BWC footage, your affiant observed the Subject Vehicle approximately 15-20 yards off the roadway in the desert resting on its hood. The front of the vehicle appeared to be facing perpendicular to the roadway (Cabinsite Road), with the right turn signal activated and a left front headlight on. The Subject Vehicle is described through a registration check via LMICC as a 2025 Honda Civic, which appeared bluish gray in color. Magos was identified through these records as the sole registered owner of the vehicle.

10. In this footage, both USPRs Brant and O'Brien were attempting to identify where the occupants were sitting in the vehicle at the time of the crash. USPR Brant asked Schmeling where the occupants were seated. USPR asked him, "Where was Cody sitting?" Schmeling responded with, "As far as I know, he was the GM (general manager) of a bunch of new places, he's kind of between three different stores right now." Cody was later identified as Cody Allen Vanalstine. USPR Brant again asked Schmeling again where Vanalstine was sitting in the car. Schmeling sounded very confused when being asked questions. USPR O'Brien

asked him if he suffered a head injury. Schmeling responded, "what?" USPR O'Brien asked Schmeling again where "Cody" was sitting in the car, and Schmeling stated, "Havasu is like." To that, USPR O'Brien responded, "I know where Havasu is" and "where is he at in your car?" Schmeling stated, "Cody" was the "main driver" and "as far as I know, I just got out of the car. I didn't know there was a crash."

11. USPR O'Brien asked Schmeling if he remembered being in a crash. Schmeling responded, "I remember getting loaded into an ambulance, and like that's about it." The last thing that Schmeling remembered was "coming down the hill, but that's about it." USPR O'Brien told him, "So you were driving." Schmeling responded with, "I wasn't driving that car." USPR O'Brien asked Schmeling who was driving, and Schmeling said, "she was" and pointed to Magos. Magos was seated next to Schmeling approximately three feet away talking to USPR Brant. USPR O'Brien asked USPR Brant who was driving, and USPR Brant responded, "he was" while pointing to Schmeling. USPR Brant received that information from Magos. Magos was then taken to an ambulance for transport to the WARMC. She was able to walk unassisted to the ambulance. USPR Brant asked Schmeling who supplied the alcohol, and Schmeling stated "me."

12. USPR O'Brien asked Schmeling again who was driving, and Schmeling stated, "I was." USPR O'Brien asked Schmeling how much alcohol he had had that night. Schmeling stated, "I've had a lot," and "I haven't even been

driving, really." USPR O'Brien stated, "you just told me you were driving" and Schmeling responded, "maybe down the hill but yeah, I was not driving up."

13. At about 2220 hours, USPR O'Brien began standardized field sobriety tests (SFST's) on Schmeling. After administering the Horizontal Gaze Nystagmus portion of the SFST's, USPR O'Brien asked, "So you were driving, correct?" and "what happened?" Schmeling responded, "So, to be honest, I was just kind of driving. I think I didn't really like hit anything." Schmeling went on to say, "I just kind of pulled over because everyone else said so," "it wasn't necessarily anything wrong as far as I know," and "I got out of the car, and I put on the ambulance." Later in this portion of the conversation, USPR O'Brien asked Schmeling again if he supplied the alcohol, and Schmeling stated, "I did." Additionally, Schmeling said that he knew that juvenile MGF was under 21. USPR O'Brien completed the remaining SFSTs with Schmeling and articulated on BWC that he obtained the following clues: 6 out of 6 clues on HGN, 5 out of 8 clues on walk and turn, and 3 out of 4 clues on the one leg stand.

14. USPR Tyrel Brant supplied additional information in the interim on this incident via his BWC and reports. This information was not made available to your affiant when writing the first affidavit that was signed on July 31, 2026.

15. USPR Brant stated in a report that, while on scene, Magos identified herself as a passenger in the Subject Vehicle, and Schmeling identified himself as the driver by stating, "I was driving, yeah." In a field interview with Magos, she

identified Schmeling as the driver, and she permitted him to drive due to her level of intoxication. Magos informed USPR Brant that the group had arrived at Cabinsite Cove where they spent several hours drinking alcohol prior to the incident. USPR Brant did not speak long with Magos on scene as she was transported via ambulance to WARMC. Another occupant of the vehicle (BKB), who is a juvenile, identified Schmeling as the operator of the Subject Vehicle as well.

16. According to dispatch records, Schmeling was arrested at approximately 2304 hours. Schmeling was transported to the Katherine Landing Booking Station for initial processing and then was taken to WARMC for evaluation. He was released from the WARMC and then booked into the Mohave County Detention Center in Kingman, Arizona.[4]

17. It was reported to USPRs that a total of six subjects were in the vehicle at the time of the crash, two females and four males. The subjects that were identified were Mason Martin Schmeling, Cody Allen Vanalstine, Erika Dawn Magos, MGF (who was 17 years old at the time of the crash), BKB, and Joshua Griffin Bradford.

18. On July 29, 2026, at approximately 0140 hours, USPR Brant interviewed Schmeling while he was at the WARMC getting evaluated before his

---

4 Schmeling was charged via citations with several misdemeanors related to DUI and providing alcohol to minors. Because additional information was subsequently developed calling into question whether he was driving at the time of the crash, those citations were dismissed without prejudice by the United States Attorney's Office, and Schmeling was released from custody.

transport to Mohave County Detention Center. Schmeling told USPR Brant he was not the driver of the vehicle. While at WARMC, USPR Brant interviewed Magos to clarify seating arrangements in the vehicle. Magos stated she was seated behind the driver's seat. Bradford was seated in the middle position of the backseat. BKB was in the front passenger seat accompanied by MGF. She stated Vanalstine was positioned behind the front passenger seat.

19. On July 29, 2026, at approximately 0926 hours, your affiant called the WARMC to inquire about patient status of the victims from the crash and their current locations. At the time of the call, your affiant did not know about the subjects identified as "Brody" and "Josh." Your affiant understood that Magos, MGF, and Vanalstine were transported to WARMC for their injuries. In the call with the hospital, your affiant learned that Magos and MGF were transferred to Sunrise Hospital in Las Vegas, NV. MGF had suffered a tibial-fibula fracture. Magos had a reported injury of hearing loss with possible perforation of the ear. Vanalstine had been discharged with an ankle injury, and he had refused treatment. He also suffered a laceration to the arm that required stitches, but he refused.

20. At approximately 1503 hours on July 29, 2026, your affiant interviewed MGF at Sunrise Hospital in Las Vegas, NV. At the time, she was 17 years old (she is now 18). Her legal guardians were present and were identified as Joseph and Ashley. MGF consented to being interviewed with her guardians present. MGF stated, "I don't remember a lot." She remembered sitting on the floorboard of the

front passenger seat, and the male identified as "Brody" was sitting in the front passenger seat. She remembered "Brody" saying, "Slow down, you need to slow down." MGF remembered the vehicle "started rolling." Brody helped MGF get out of the car, and she "just laid on the ground." MGF said that she was not wearing a seatbelt.

21. MGF recollected three people sitting in the back of the car. She knew "Josh" was back there. She stated, "I'm pretty sure Mason was back there too." Earlier in the day, Magos had driven the group from Rotary Park in Bullhead City, AZ, to the lake around 1800 hours. When they arrived in the park, they drove to Cabinsite Point to "jump off the cliffs." MGF has no idea how long they were there. With Magos' vehicle, she remembered sitting on the front passenger floorboard in front of "Brody." When asked who she thought was driving, she responded, "I think, I'm pretty sure, Erika was driving." MGF believes this because "there were only dudes in the backseat that I can remember." When your affiant advised MGF that if she didn't know she could say so, MGF said, "well I mean, cause it's her car. She wouldn't let anyone else drive it," and the car is "her baby." MGF identified the car as a Honda Civic. MGF said Magos doesn't let anyone else drive her car except for her boyfriend. Magos' boyfriend was not present in the crash. MGF's father stated to me that in a phone call with MGF when she was in the ambulance, MGF stated to him that Magos was the driver. Her father stated a short time later, "I can already tell you everybody's trying to protect somebody."

22. MGF was going to have surgery for her tibial-fibula fracture on July 30, 2026. MGF said her shin was "shattered." When your affiant asked what was needed to be done to repair the fracture, she stated "pins," and "I remember them saying something about a rod in my leg." In her x-ray readings obtained through medical records, it showed MGF had a comminuted displaced distal tibial shaft fracture and displaced proximal and distal fibular fractures. Additionally, in her right foot x-ray, it showed a comminuted displaced fracture of the distal tibia and fibular shafts. In her right knee x-ray, it showed an angulated fracture of the proximal fibular shaft. Your affiant also observed a series of abrasions and bruises on her right arm, beginning around her elbow and extending down her arm. She also had a bruise on her upper right bicep, and small abrasions on her left foot and right thigh. Based on the medical records, MGF reported a head strike and loss of consciousness during the crash.

23. On July 31, 2026, the Subject Vehicle was seized via warrant from A&G towing in Bullhead City, Arizona, and it was taken to the Bullhead City Police Department impound lot at 1285 Alonas Way in Bullhead City, Arizona, for safekeeping. USPR Logan Schuman was present for and conducted the seizure on behalf of your affiant. USPR Schuman took photos of both the exterior and interior portions of the Subject Vehicle while at A&G Towing. Additionally, USPR Schuman took photos of the exterior of the vehicle after transport to the Bullhead City Police Department impound yard. USPR Schuman informed your affiant that

he seized no evidentiary items from the vehicle. Upon review of his BWC on August 10, 2026, your affiant did not observe USPR Schuman locating indicia of ownership while at A&G Towing.

24. Reviewing the photos taken of the Subject Vehicle by USPR Schuman, your affiant observed that the vehicle appeared to be a total loss, with major and significant structural damage. The roof of the vehicle was both concaved and protruding at points, indicating a rollover had occurred. The hood of the vehicle had denting throughout the hood, with the most pronounced crush areas being at the points of the hood directly above both headlights. All windows of the vehicle were broken or severely damaged, except for the left-side rear main window. There was no glass in the passenger side windows or the rear window, and the front window was shattered and peeling from the roof connection. Emergency services personnel did not have to use extrication equipment on the vehicle. The passenger side right front door could not close due to the damage. The right front tire and its partial axle were no longer attached to the vehicle, and they were placed in the passenger front seat. All the head and curtain airbags appeared to be deployed. The airbag in the steering wheel also deployed. Your affiant could not ascertain from the photos if the front passenger airbag deployed.

25. According to USPR Schuman's report concerning the search on July 31, 2026, he was unable to get far into the vehicle "without risking disturbing evidence." In the areas USPR Schuman was able to observe, your affiant observed

in his BWC that there appeared to be a red stain on the rear driver's side airbag that deployed to the side of the seat. This stain appeared to be a different color than other areas of the airbag (i.e., different color than the stitching and writing). Your affiant talked with USPR Schuman on August 13, 2026, and he recalled the stain and stated he was not sure if it was blood but confirmed that the shape and color of the stain did not appear natural to the airbag. Additionally, USPR O'Brien described to your affiant on August 13, 2026, that while he was at the A&G lot on July 29, 2026, he saw what appeared to be blood on one of the airbags deployed in what he thought was in an area of the backseat. He could not recall the exact location of the airbag that had the apparent bloodstain on it. USPR O'Brien took a photo of the stain, but it was not clear to him from the photo what the location was in the car.

26. On the afternoon of July 29, 2026, your affiant advised USPR O'Brien via phone to go to A&G towing to check the positioning of the driver's seat. In that conversation, he confirmed that neither he nor USPR Brant moved the driver's seat during the incident, and it was reasonably believed that emergency personnel did not either since all subjects were outside of the vehicle when emergency services arrived. Your affiant asked USPR O'Brien if there were large items behind the driver's seat, indicating that the tow truck driver potentially moved the seat to fit vehicle parts into the car prior to the tow, and USPR O'Brien stated there were no large items behind the driver's seat. USPR O'Brien was at the lot at approximately 1822 hours (when your affiant received vehicle photos from him). In the photos that

USPR Schuman took on July 31, 2026, your affiant observed that the driver's side seat was pushed up very close to the steering wheel with the bottom edge of the cushioned seat frame directly parallel to the steering wheel.

27. According to Nevada Department of Motor Vehicle records, Schmeling is 6'1 and 287 pounds. His driver's license was issued on 07/26/2023. According to Arizona Department of Motor Vehicle records, Magos is 5'02 tall and weighs 120 pounds. Her driver's license was issued on 07/27/2023.

28. On August 17, 2026, the Subject Vehicle was searched by your affiant via warrant at the Bullhead City Police Department impound yard in Bullhead City, Arizona. Also assisting in the warrant execution was Trooper Phil McCabe with the Arizona Department of Public Safety Vehicular Crimes Unit and USPR Brant. During this search, several items were seized from the vehicle to include empty alcohol containers, vape pens (which are typically used to smoke tetrahydrocannabinol [THC] products), various vehicle parts, and DNA swabs.[5] This included several deployed airbags, DNA swabs from the deployed airbags

---

5 Based on training and experience, your affiant knows that THC is the active ingredient in marijuana that makes a person get "high" (i.e., under the influence of a drug). Marijuana is illegal to possess under federal law, as it is a Schedule I controlled substance. 21 U.S.C. § 812. Based on training and experience, your affiant knows that THC is extracted from the cannabis (marijuana) plant through a manufacturing process to be used in some vape pens. Under federal law, it is illegal to operate or be in actual physical control of a motor vehicle while under the influence of alcohol, drugs, or any combination thereof while in a park area. 36 C.F.R. § 4.23(a)(1).

(from the driver's side curtain and driver's side front airbags), and the airbag control module. Your affiant obtained two swabs (wet samples) from staining not natural to the airbag located on the driver's side front area of the driver's side curtain airbag. Additionally, your affiant obtained two swabs (wet samples) from staining on the driver's side front airbag.

29. During this search, Trooper McCabe and USPR Brant took measurements of the driver's seat and its positioning relative to the steering wheel. Trooper McCabe and USPR Brant obtained the following measurements: from the steering wheel to the seat back, they obtained a measurement of 21 inches. From the edge of the seat cushion to the knee bolster airbag, they obtained a measurement of 8 inches. From the floor firewall to the edge of the seat cushion, they obtained a measurement of 18 inches. From the brake pedal to the seat cushion, they obtained a measurement of 14 inches.

30. USPR Brant, who is 5'10, was placed in the driver's seat after the evidentiary items were collected. USPR Brant's knees were tucked into the dashboard, and he articulated he could not get to the brake pedal. After sitting in the position for a moment, he articulated that "maybe" he could "punch the brake and gas barely" and could potentially get to the pedals sideways. Your affiant observed USPR Brant's knees placed firmly and uncomfortably against the dashboard of the vehicle. Trooper McCabe later opined that if Schmeling, who is 6'1, had been operating the vehicle with the seat in that positioning, he would have likely suffered

femur and hip injuries. In the preliminary review of the airbag control module data, Trooper McCabe relayed to me that the data showed the driver's seat as "forward." Trooper McCabe indicated the positioning of the seat was the positioning during the crash. Additionally, in the physical search of the vehicle, your affiant located what appeared to be a female sandal that was black in color and had two gold metal butterflies and a gold metal circle affixed to the strap of the sandal. This sandal was located underneath the deployed knee bolster airbag on the driver's side floorboard.

31. Your affiant reviewed additional interview reports written by USPRs Tyrel Brant and Matthew O'Brien. In an interview they conducted with Joshua Bradford on August 13, 2026, Bradford referenced the driver as "she" on three separate occasions. In USPR Brant's report, Bradford told the rangers that "Erika" was the driver when asked who he believed the driver to be. USPR's Matthew O'Brien and Logan Schuman conducted an interview with Cody Vanalstine on August 19, 2026. According to the interview report, Vanalstine told the rangers that Magos was the driver of the Subject Vehicle. Vanalstine told the rangers that Schmeling was sitting behind the driver's seat of the Subject Vehicle (i.e., he was in the backseat of the Subject Vehicle).

**Things to Be Searched for and Seized**

32. Based on training and experience, your affiant knows that the Emergency Department (ED) at WARMC in Bullhead City, Arizona, as well as other medical facilities, normally create medical records and other documents during

treatment (including an assessment) of a patient. Such documents may support the nature of an illness or injury – including whether a person is intoxicated and/or impaired by alcohol and/or drugs – as the condition of a patient is important to that person's diagnosis and treatment. This may include medical records/documents, to include emergency room reports, lab reports, toxicology reports, and similar records.

33. Based on training and experience, your affiant knows that WARMC creates and maintains medical records when patients are seen at the ED. Your affiant also knows that it is common for an ED to check patients who are intoxicated/impaired for their breath and/or blood alcohol content, as well as for the use of controlled substances.

34. On September 1, 2026, your affiant confirmed that WARMC, which is located at 2735 Silver Creek Road in Bullhead City Arizona, has a medical records department in Bullhead City, Arizona.

35. Your affiant is seeking a search warrant for Magos's medical records for her treatment at the WARMC ED on or from July 28, 2026, to July 29, 2026. Magos is an adult female, and her date of birth is in 2006. The last four digits of her Social Security Number (SSN) are 4511. (See also Attachment A.)[6] The things to be searched and seized from WARMC are particularly described in Attachment B.

6 To the extent necessary to locate her medical records, MAGOS's full birthdate and SSN will be provided to WARMC hospital personnel.

## Conclusion

36. Based on the information set forth above, your affiant believes that violations of federal law have occurred, including violations of 36 C.F.R. § 4.23(a), 36 C.F.R. § 4.22(b)(3), and 36 C.F.R. § 2.35(c), and that there is probable cause to support that evidence of those violations is within Magos's medical records at WARMC in Bullhead City, Arizona. Thus, your affiant is respectfully requesting the issuance of a federal search warrant for Magos's medical records from WARMC for her visit/treatment on or from July 28-29, 2026.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on September 2, 2026

ELIZABETH DIETZEN Digitally signed by ELIZABETH DIETZEN Date: 2026.09.02 11:31:10 -07'00'

Elizabeth Dietzen, Special Agent
National Park Service

_X_ Sworn by Telephone

Camille D. Bibles Digitally signed by Camille D. Bibles Date: 2026.09.03 09:23:05 -07'00'

Camille D. Bibles Date/Time
United States Magistrate Judge